United States District Court
Southern District of Texas
**ENTERED**
October 17, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-00166 |
| | § | |
| 5.934 ACRES OF LAND, MORE OR LESS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL**

## I. Introduction

This is a land condemnation case in which the single party with an ownership interest in the condemned property, Defendant Mary Francis Chupick Bennett, Trustee of the Bennett Marital Trust, has filed a Motion to Compel discovery allegedly related to the amount of just compensation to which she is entitled for the interest taken. (Dkt. No. 34). In 2020, Plaintiff United States of America effected the taking of a fee simple estate in land owned by Defendant in Hidalgo County, Texas, for the stated public purpose of constructing, installing, operating, and maintaining "roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures" designed to help secure the U.S.-Mexico border. At the time, the property already included a particular type of fencing placed there by Plaintiff in 2008: a concrete barrier with steel bollard fencing built atop a preexisting earthen levee, allegedly pursuant to the authority granted Plaintiff under its levee easement on the property. Defendant disputes the existence of any such authority and claims ownership of the barrier and bollard fencing (collectively, what she refers to as the "wall,"),[1] for which she may be justly compensated in the amount of what it would now cost to replace an

[1] The Court adopts this term for the purpose of this Order, to refer to the barrier and bollard fencing as a whole.

equivalent structure. Plaintiff disagrees that just compensation may include replacement costs, and has raised various objections to Defendant's requests for discovery of costs information, prompting Defendant's Motion to Compel. Upon consideration of the Motion and the parties' responsive briefing, (Dkt. Nos. 37, 39), in light of the relevant law, the Court must sustain Plaintiff's chief relevancy objection and deny the Motion, as it finds that Defendant may not equitably recover replacement costs for a government-built structure in part authorized by the levee easement and built under a colorable—even if mistaken—understanding of its easement rights, for a statutorily authorized public purpose.

## II. Factual and Procedural Background, and Overview of Discovery Dispute

Plaintiff acquired title to the property at issue, a fee simple estate of 5.934 acres of land, when it deposited $113,202.00 in estimated just compensation in the Court's registry on July 10, 2020, after filing its Declaration of Taking (DOT). *See* 40 U.S.C. § 3114(b)(1); *United States v. 162.20 Acres of Land, More or Less, Situated in Clay Cnty., State of Miss.*, 639 F.2d 299, 303 (5th Cir. 1981) (filing of DOT and deposit of estimated compensation "vests title in the United States, accomplishing the taking"); (Dkt. Nos. 2, 5). Plaintiff's Complaint in Condemnation and DOT state that "[t]he public purpose for which said property is taken is to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas." (Dkt. Nos. 1, 2, Schedule B). Plaintiff initially identified three parties as having an interest in the property: (1) Mary Frances Chupick Bennett, Trustee of the Bennett Marital Trust, c/o David Bennett, son of Trustee; (2) Pablo "Paul" Villarreal, Jr., Hidalgo County Tax Assessor and Collector; and (3) "Unknown Tenant Farmer," later identified as Troy Bradford. (Dkt. Nos. 1, 2, Schedule G; Dkt. No. 21). The latter two parties executed disclaimers of their interests, leaving Defendant Trustee as the single interested party entitled to just compensation, the amount of which must be

determined in this Court. *See* (Dkt. Nos. 16, 17, 21, 22); *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9 (1984) ("The United States has the authority to take private property for public use by eminent domain, but is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof.") (internal citation omitted); FED. R. CIV. P. 71.1(h) ("In an action involving eminent domain under federal law, the court tries all issues, including compensation" absent certain exceptions not present here), (i)(C) (once plaintiff has taken title, court awards compensation "for the title, lesser interest, or possession taken"). Defendant seeks a jury trial on this issue. (Dkt. No. 12).

Through Defendant's most recent interrogatories and requests for production relating to this issue, she seeks discovery related to her replacement costs method of valuation: answers and documents that would allow Plaintiff to ascertain the average costs per linear foot of constructing a concrete barrier with bollard fencing on top in Hidalgo County in the past three years. (Dkt. No. 34, Exhs. E, F).[2] Plaintiff objected to the discovery requests as vague, ambiguous, unduly burdensome, and irrelevant, but its main objection is to relevancy. Defendant's Motion to Compel and reply in support attempt to dispel each objection, with a focus on asserting the relevance of the requested discovery based on her position that Plaintiff built the wall without authority to do so, such that Defendant owned the wall on the date of the taking and must be compensated for the costs to replace it. (Dkt. Nos. 34, 39). Plaintiff disputes relevancy on the asserted grounds that the levee easement gave it authority to reinforce the existing levee with the wall, that Defendant's effort to seek just compensation for the wall amounts to an untimely inverse condemnation claim over which the Court lacks jurisdiction, that replacement costs are irrelevant to market value, and

[2] These discovery requests consist of Defendant's Interrogatories Nos. 1-4 and Requests for Production Nos. 1-5. (Dkt. No. 34, Exhs. E, F).

that equity favors excluding replacement costs from an award of just compensation. (Dkt. No. 34, Exhs. E, F; Dkt. No. 37).

**III. Defendant's Motion to Compel**

**A. Legal Standard**

The Federal Rules of Civil Procedure allow "[a] party seeking discovery [to] move for an order compelling an answer [or] production" if another party fails to answer an interrogatory submitted under Rule 33 or to produce documents requested under Rule 34, or if the response is so evasive or incomplete as to constitute a failure to respond. FED. R. CIV. P. 37(a)(3)(B), (a)(4). The scope of permissible discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1); *see also* FED. R. CIV. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."); FED. R. CIV. P. 34(a) ("A party may serve on any other party a request [for production] within the scope of Rule 26(b)[.]"). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The party resisting discovery has the burden to show specifically how each interrogatory and request for production is objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Rule 33 provides that "[t]he grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(4). Similarly, Rule 34 states that a response to a request for production must "state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B).

**B. Plaintiff's Objections**

**1. Vagueness, Ambiguity, and Undue Burden**

All of Plaintiff's objections lead with the sentence that "[t]he United States objects to this [interrogatory or request for production] as vague, ambiguous, and unduly burdensome," which

Defendant challenges as lacking in the requisite specificity. (Dkt. No. 34 at pp. 25-27; *see* Exhs. E, F). As Defendant observes, the objections contain no explanation for why the requests for replacement costs information are vague or ambiguous, and the stated ground for why they are burdensome—that the information "is readily obtainable through more convenient and less burdensome discovery that does not request non-discoverable or privileged information"—is more conclusory than specific. *See id.* Plaintiff does not identify alternate sources from which the requested information is "readily obtainable," nor does it explain how the information is otherwise "non-discoverable" or privileged. Plaintiff's response to the Motion to Compel devotes a single footnote to its vagueness, ambiguity, and undue burden objections, attempting to support them with argument that not all "levee infrastructure" constructed within the past three years is the same as the structure on Plaintiff's property, which consists of "a 16-foot concrete flood wall, with mixed 18-foot bollard beams and 6-foot bollard guard rails." (Dkt. No. 37 at ¶ 36 n.88). This argument raises no ambiguity or vagueness on Defendant's part, nor does it demonstrate an undue burden. (Dkt. No. 39 at p. 23). At most, it constitutes another ground for Plaintiff's relevancy objection, stated with less specificity than those discussed *infra*, and ultimately unavailing. Plaintiff fails to show that what Defendant seeks to ascertain—the average costs per linear foot of constructing a concrete barrier with bollard fencing on top—cannot be derived from the construction costs of structures that are similar, even if not identical. Plaintiff's footnote concludes with the argument that producing the requested discovery would impose an undue burden because "ultimately such information has no bearing on the sole unresolved issue of just compensation," but this simply restates Plaintiff's relevancy objection, discussed and resolved *infra*. (*Id.* at p. 23). Plaintiff's first three objections do not carry its burden, and must be overruled.

**2. Relevancy**

**a. First Ground for Objection: Wall was "Dual Purpose" Improvement by Plaintiff under Authority of its Levee Easement**

Expounding upon a ground alluded to in Plaintiff's discovery responses—its characterization of the structure on Defendant's property as a "levee improvement"—Plaintiff's response to the Motion argues that the sought-after costs information is irrelevant to the issue of just compensation because Plaintiff owned the improvement on the date of the taking, since its levee easement rights allowed it to construct and thereafter maintain the improvement for the "dual purpose" of flood control and "persistent impedence." (Dkt. No. 37 at ¶¶ 2, 7, 8; *see* Dkt. No. 34, Exhs. E, F). Both parties provide evidence that in 1935, Hidalgo County obtained a "right of way easement over and across [the subject property] for the purpose of construction, reconstruction, alteration and maintenance of levees, borrow pits, roads and to subject said tracts to such burdens as may be placed upon it by the use of the same in the control of the flood waters of the Rio Grande River." (Dkt. No. 34, Exh. B; Dkt. No. 37, Exh. 3). In 1937, the County executed an easement deed in favor of Plaintiff, who acquired what the deed described as "the perpetual right and easement to enter and re-enter in and upon the [subject property]…for the purpose of constructing, operating, and maintaining suitable levees, together with the right to use so much of said land for borrow in connection therewith, and the right to construct and maintain thereon suitable roadways, fences, gates, cattle guards, telephone lines, ramps and road crossings or other structures in connection with the operation and maintenance of said levee." (Dkt. No. 34, Exh. C; Dkt. No. 37, Exh. 3). Plaintiff takes the position that in 2008, it relied on this authority, as well as its authority of "persistent impedence," to construct the concrete barrier with bollard fencing atop the preexisting earthen levee on Defendant's property. *See* (Dkt. No. 37 at ¶¶ 7, 8). "[A]fter construction was completed, by and through the [U.S. International Boundary and Water Commission, or IBWC] and [U.S. Customs and Border Protection, or CBP], the United States

exclusively owned, maintained, controlled, and operated" the levee improvement, which remains under the sole control and use of Plaintiff after the taking. (*Id.* at ¶ 8). According to Plaintiff, Defendant may receive just compensation for its fee simple estate encumbered by the easement and improvement "built within the footprint" of that easement, but not for the costs of replacing an improvement she did not own. (*Id.* at ¶¶ 2, 7, 8).

Defendant also characterizes the wall as an improvement, but argues that Plaintiff built it for the sole purpose of "persistence impedence," clarifying with argument and evidence what that phrase encompasses. In portions of a 2017 deposition transcript from another case, the CBP wall program acquisition manager, Loren Flossman, testified that the structures previously built by CBP along the U.S.-Mexico border in Hidalgo County were designed and intended to impede the unlawful entry of people and drugs from Mexico into the United States. (Dkt. No. 34, Exh. A at pp. 28, 39, 40). Flossman's testimony accords with Defendant's citation to the Secure Fence Act of 2006 as the statutory source of authority for the improvement on her property, as the Act empowered CBP's umbrella agency, the U.S. Department of Homeland Security (DHS), to establish "operational control" (defined to mean the prevention of unlawful entries of persons and contraband) over the U.S.-Mexico border through the construction of fencing. (Dkt. No. 39 at p. 6 n.9); Secure Fence Act of 2006, Pub. L. No. 109-367, 120 Stat. 2638 (Oct. 26, 2006). Defendant's reply acknowledges, in a footnote,[3] Plaintiff's position that the improvement served a "dual" purpose—security and flood control, the latter authorized not by statute but by Plaintiff's levee easement—but contends that the easement supplied no authority, even in part. *See* (Dkt. No. 39 pp. 4-7). Looking to the original levee easement granted to the County, Defendant submits that it "expressly limits the easement holder's rights to using the servient parcel 'in the control of the flood waters of the Rio Grande River,'" and that the County "could assign [Plaintiff] no more

---

[3] (Dkt. No. 39 at p. 5 n. 4).

rights than it held." (Dkt. No. 39 at p. 5 n.4). And even if the easement deed properly describes what was conveyed, Plaintiff has only the limited right to enter the property "for the purpose of constructing, operating, and maintaining suitable levees" or other structures "in connection with" that purpose. (*Id.*). According to Plaintiff, the improvement does not come within either grant of rights, for the simple reason that it is "a security fence (with four-inch gaps between bollards)." (*Id.* at p. 5) (quoting *United States v. 4.620 Acres of Land, More or Less, in Hidalgo Cnty., Tex.* (*4.620 Acres I*), 2021 WL 4099829, at *3 (S.D. Tex. Sept. 9, 2021)).

It is, but not entirely. The Court agrees with Defendant that the above-cited statutory language, Flossman's testimony, and the physical characteristics of the bollards reveal that Plaintiff built and has maintained the wall for the principal purpose of security. *See* (Dkt. No. 39 at p. 7). But as the district court went on to observe in *4.620 Acres I*, cited by Defendant, it is the "clearly water-pervious fence atop the concrete lev[ee]" that "does not appear to comport with the lev[ee] easement[.]" *4.620 Acres*, 2021 WL 4099829, at *3. Flossman conceded that the bollards were not for any flood control purpose because water could pass through them, but when posed the broader question of whether "all of the components on the border wall structure in Hidalgo County" fell outside that purpose, Flossman stopped short of agreeing; he responded that "[t]he fence, steel bollards on top, are not for flood control." (Dkt. No. 34, Exh. A at pp. 41, 55). At the August 5, 2022 hearing on the Motion, Defendant acknowledged that the concrete portion of the improvement aids in flood control, but insisted that a structure's ability to withstand flooding does not give it a flood control purpose or make it a levee.[4] This argument holds sway if, for example, the structure were a home—the example offered by Defendant at the hearing—but a concrete wall sitting atop an earthen levee falls on a different end of the spectrum of flood-resistant structures.

---

[4] By agreement of the parties and with the Court's permission, Defendant's son, David Bennett, a contingent beneficiary of the trust and also an attorney, presented argument on Defendant's behalf.

As Plaintiff observed at the hearing, it serves the purpose of levee reinforcement, even if it mostly enhances security. Whatever limits the original language of the easement placed on Plaintiff, it did not require that Plaintiff's entry onto Defendant's property be for the singular or even primary purpose of flood control, so long as it served that purpose.

Defendant offers a final argument for why the structure on its property, in whole or in part, does not fall within the terms of the levee easement. As Defendant points out, Plaintiff effected the taking of the property for the public purpose of constructing, installing, operating, and maintaining "roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the [U.S.-Mexico border]" in Hidalgo County. (Dkt. No. 2; Dkt. No. 39 at p. 7). Defendant reasons that Plaintiff would have no reason to condemn a fee simple interest in the "footprint" of the easement if the improvement already conformed with the easement—an argument that persuades if Plaintiff had no purpose for the taking other than the construction of fencing. (Dkt. No. 39 at p. 7). However, the stated purpose of the taking is more expansive, extending past structures with a flood control purpose or incident to that purpose, and therefore past the confines of the easement. At the hearing, Plaintiff submitted that the purpose of this particular taking is to improve lighting, to provide a gate that it could not have constructed in 2008, given the absence of any flood control purpose, and to construct an all-weather road south of the barrier, in addition to other infrastructure. The Court accepts that Plaintiff had a reason to condemn that does not conflict with its position that the improvement falls within the easement.

In sum, although Plaintiff cannot appeal to its levee easement rights as the source of its authority to construct the bollard fencing, Plaintiff's easement authorized it to enter Defendant's property to construct the concrete barrier on which the fencing sits, since this portion of the improvement serves the purpose of levee reinforcement, even if its primary purpose is security. Standing alone, this finding does not determine the relevance of the costs information sought by

Defendant, but it informs the Court's analysis of Plaintiff's additional grounds supporting its relevancy objection, to which the Court now turns.

**b. Second Ground for Objection: Court Lacks Jurisdiction to Consider What Amounts to Untimely Inverse Condemnation Claim by Defendant**

As the levee easement did not afford Plaintiff full rights to construct the entirety of the wall on Defendant's property, the Court next considers Plaintiff's alternate argument that Defendant is jurisdictionally barred from now seeking or obtaining a compensation award (and therefore related discovery) through what amounts to an inverse condemnation claim brought outside the required statutory period for doing so. (Dkt. No. 37 at ¶¶ 2, 14, 15, 22-27; *see* Dkt. No. 34, Exhs. E, F). It is well-settled, as Plaintiff observes, that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." (Dkt. No. 37 at ¶ 14); *e.g.*, *Knick v. Twp. of Scott, Penn.*, 139 S. Ct. 2162, 2167 (2019). When a taking occurs not through a formal condemnation action but by "physical invasion," "the usual rule is that the time of the invasion constitutes the act of taking, and 'it is that event which gives rise to the claim for compensation and fixes the date as of which the [taking] is to be valued.'" (Dkt. No. 37 at ¶ 14); *United States v. Clarke*, 445 U.S. 253, 257 (1980) (quoting *United States v. Dow*, 357 U.S. 17, 22 (1958)). Both parties cite to *Clarke* for its identification of this claim as one for inverse condemnation, "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." (Dkt. No. 37 at ¶ 14; Dkt. No. 39 at p. 8); *Clarke*, 445 U.S. at 257 (cleaned up). As Plaintiff points out, the U.S. Court of Federal Claims has exclusive jurisdiction to consider an inverse condemnation claim valued in excess of $10,000, and any such claim faces a jurisdictional bar unless filed "within six years after the right of action first accrues." (Dkt. No. 37 at ¶ 15); 28 U.S.C. §§ 1346(a)(2), 1491(a)(1), 2401(a); *see Gen. Land Off. v. United States Dep't of the Interior*, 947 F.3d 309, 318

(5th Cir. 2020) (timing requirement of § 2401(a) is a condition of government's waiver of sovereign immunity, and therefore jurisdictional). According to Plaintiff, Defendant's request for just compensation in the form of replacement costs equates to an inverse condemnation claim that should have been brought in the Court of Claims within six years of Plaintiff's construction of the wall, and the Court lacks jurisdiction to consider it now. (Dkt. No. 37 at ¶¶ 2, 14, 15, 22-27).

A fellow district court confronting the same argument described it as a "red herring," and the Court agrees that Defendant's discovery requests have no jurisdictional implications. (Dkt. No. 39 at pp. 8-11); *United States v. 4.620 Acres of Land, More or Less, in Hidalgo Cnty., Tex.* (*4.620 Acres II*), 2021 WL 5999388, at *12-14 (S.D. Tex. Dec. 20, 2021). At the time of the alleged "physical invasion" of Defendant's property, for the purpose of building the wall, Defendant could only have recovered the value of what was taken, not the replacement value of an improvement facilitated by the taking. And considering that Plaintiff had the right, as easement holder, to enter Defendant's property to construct the concrete barrier, it did not physically invade (i.e., enter without lawful authority) the land on which it built the wall, despite the "water-pervious" nature of the bollards atop the barrier. Now that Plaintiff has instituted a formal condemnation proceeding to take a fee simple interest in the land encompassing the wall, Defendant may seek and obtain just compensation for the interest taken, and discovery related thereto. That the improvement was built more than six years ago does not prevent her from doing so.

**c. Third Ground for Objection: Even if Defendant Owns Wall, Replacement Costs Evidence Is Irrelevant to Market Value**

Plaintiff's third ground for its relevancy objection, asserted in the alternative, is that even if Defendant owned the wall on the date of the taking, evidence of replacement costs has no relevance to the market value of the interest taken "because no private market participant would build the [wall]." (Dkt. No. 37 at ¶¶ 2, 28-31; *see* Dkt. No. 34, Exhs. E, F). This argument has its

origin in the well-settled principle that just compensation "means in most cases the fair market value of the property." *Kirby Forest Indus.*, 467 U.S. at 10. Although "[t]he burden of establishing value rests with the owner of the condemned property," the relevant burden for the purpose of this Motion—showing the irrelevance of discovery to a determination of market value—lies with the party resisting discovery. *United States v. 50.822 Acres of Land, More or Less, in Nueces Cnty., State of Tex.*, 950 F.2d 1165, 1168 (5th Cir. 1992); *see* (Dkt. No. 37 at ¶ 28; Dkt. No. 39 at p. 11 n.17). In an effort to meet its burden, Plaintiff submits that the U.S. Supreme Court "rejected the use of the cost approach, … 'whe[re] no one would think of reproducing the property.'" (Dkt. No. 34, Exhs. E, F; Dkt. No. 37 at ¶ 29) (quoting *United States v. Toronto, Hamilton & Buffalo Navigation Co.*, 338 U.S. 396, 403 (1946)). Plaintiff also cites to Fifth Circuit authority recognizing that "it has almost uniformly been held that, absent some special showing, reproduction cost evidence is not admissible in a condemnation proceeding." (*Id.*) (quoting *United States v. Benning Housing Corp.*, 276 F.2d 248, 250 (5th Cir. 1960)). Under Plaintiff's reading of *Benning*, courts reject the cost approach in the absence of "unequivocal evidence that the [improvement] involved would be reproduced by private investors at the risk of private capital." (*Id.*) (quoting *Benning*, 276 F.2d at 253). According to Plaintiff, "there is no evidence that any private market participant would for any reason seek to [construct] concrete wall with bollard on top," rendering the cost approach, and any discovery supporting it, irrelevant in this case. (Dkt. No. 34, Exhs. E, F; Dkt. No. 37 at ¶ 28).

To lay the foundation for Defendant's response that the cited authority does not carry Plaintiff's burden, her Motion identifies "three recognized approaches to valuing property: (1) the sales-comparison approach, (2) the income-capitalization approach, and (3) the cost approach." (Dkt. No. 34 at p. 17) (citing *Seravalli v. United States*, 845 F.2d 1571, 1573 (Fed. Cir. 1988); *Sill Corp. v. United States*, 343 F.2d 411, 416 (10th Cir. 1965)). Which approach—or combination of

approaches—to apply turns on the facts, with the aim of securing the most reliable valuation. (*Id.* at pp. 17-18) (citing *Seravalli*, 845 F.2d at 1575 ("[T]he law is not wedded to any particular formula or method for determining the fair market value as the measure of just compensation.... It may be based on comparable sales, reproduction costs, capitalization of net income or an interaction of these determinants."); *CSX Transp., Inc. v. Georgia State Bd. of Equalization*, 552 U.S. 9, 17 (2007) ("Appraisers typically employ a combination of [valuation] methods because no one approach is entirely accurate, at least in the absence of an established market for the type of property at issue. The individual methods yield sometimes more, sometimes less reliable results depending on the peculiar features of the property evaluated."); *Kimball Laundry Co. v. United States*, 338 U.S. 1, 20 (1949) (market value should be determined "with an approach which seeks with the aid of all relevant data to find an amount representing value to any normally situated owner or purchaser of the interests taken")).

Defendant asserts that because "there are no comparable sales of property with an improvement similar to the Wall,"[5] and the improvement does not produce income, the sales-comparison and income-capitalization approaches would not achieve a reliable valuation, leaving the cost approach (and related discovery) most relevant to a determination of just compensation. (Dkt. No. 34 at p. 19). According to Defendant, the authority cited by Plaintiff does not show otherwise, and the Court agrees. (*Id.* at pp. 20-25). The condemned property in *Toronto* consisted of a ferry valued by the Court of Claims using a combination of the sales and income approaches. *See Toronto*, 338 U.S. at 401. The Supreme Court reversed, finding the record insufficient to

---

[5] Plaintiff's response suggests that there are, but cites only to a market analysis performed in 2020 "to support the proposed border wall construction project," without explaining how the analysis sheds light on the valuation of property including a similar improvement. (Dkt. No. 37 at ¶ 29 n.71; Dkt. No. 39 at p. 13). And even if comparable sales exist, this fact alone does not render evidence of replacement costs inadmissible. (Dkt. No. 39 at p. 13); *see Benning*, 276 F.2d at 251 (rejecting government's position that reproduction cost evidence was not admissible because other indicia of value, i.e., comparable sales and income, were available).

support the lower Court's valuation—the sales considered were too dissimilar, and the income considered too remote in time—and remanded for consideration of additional evidence. *Id.* at 403, 406-07. Plaintiff cites to *Toronto* for its observation, in dicta, that reproduction costs do not provide a suitable standard for assessing value "when no one would think of reproducing the property," but even if the observation had precedential weight, the Supreme Court did not suggest that it retains force even when other standards fail to achieve a reliable valuation. *Id.* at 403. The Court had no occasion to make this suggestion, since the sales and income approaches remained appropriate for the Court of Claims to apply on remand, after consideration of additional evidence. Plaintiff's response to the Motion does not attempt to counter Defendant's reading of *Toronto*, which the Court finds persuasive. The decision does not render replacement costs irrelevant to a determination of just compensation when no other approach would achieve a reliable valuation.

The other case on which Plaintiff relies, the Fifth Circuit's decision in *Benning*, involved the valuation of two condemned leasehold estates improved by military housing projects built pursuant to federal statute. *Benning*, 276 F.2d at 249. At trial, the district court permitted the jury to hear evidence relating to all three valuation methods, the government appealed on the basis that evidence of reproduction costs was inadmissible, and the Fifth Circuit agreed. *Id.* at 249-50. As Plaintiff asserts, *Benning* recognized that "absent some special showing," most courts do not admit this evidence, but went on to observe that "it is equally well recognized that in some cases, and upon a proper showing, the admission of reproduction cost evidence is justified, and even mandatory." *Id.* at 250. When evidence of comparable sales does not render market value "established," "it is the primary responsibility of the trial court to determine whether reproduction cost evidence should be admitted as an aid to valuation." *Id.* at 251. The following three factors govern admission of this evidence: (1) "the interest condemned must be one of complete ownership"; (2) "there must be a showing that substantial reproduction would be a reasonable

business venture"; and (3) "a proper allowance [must] be made for depreciation." *Id.* at 250.[6] In *Benning*, the Fifth Circuit's application of this test turned on the first factor. Since, on the date of taking, both leases at issue had more than 65 years yet to run until any improvements not removed by the condemnees became the government's property under the leases' terms, the Court deemed the value of the government's rights in the housing project improvements as "negligible" at that time. *Id.* at 249, 251. Still, the Court interpreted the particular government incentives offered to stimulate building of the projects to allow only for "a return based upon original cost rather than reproduction," such that evidence of the latter was inadmissible. *Id.* at 252-53. The Court found this conclusion "reinforced"—but not, as Plaintiff would suggest, determined—by the fact that "the record is totally devoid of any unequivocal evidence that the project here involved would be reproduced by private investors at the risk of private capital." *Id.* at 253. In other words, since the projects would not have been built but for the government incentives, the Court was further justified in relying on the nature of those incentives in determining that the condemnees lacked the ownership interest necessary to recover replacement costs. The sales and income approaches remained appropriate standards, as in *Toronto,* and the costs approach remained valid so long as the Court considered evidence of original rather than reproduction costs. *Id.*

Plaintiff relies on *Toronto* and *Benning* for their dicta and general statements of law, but offers no justification for a reading of either that would exclude consideration of replacement costs in a case that does not concern income-producing property with comparable sales, or similar government incentives. Assuming that no other reliable method of valuing the wall exists—and assuming *arguendo* Defendant's ownership of the improvement, Plaintiff fails in its burden to show otherwise—replacement costs remain potentially relevant, and therefore discoverable.

---

[6] Plaintiff recognizes application of this test, but does not attempt to apply it. *See* (Dkt. No. 34, Exhs. E, F; Dkt. No. 37 at ¶ 29 n.73).

**d. Plaintiff's Fourth Objection: Equitable Principles Preclude Recovery of Replacement Costs**

Against this backdrop, the Court considers Plaintiff's final ground for objecting to discovery of the costs information: that "compensating Defendant for the improvement built, operated and maintained by the United States constitutes an unfair windfall in her favor, and [an] unfair burden to the public." (Dkt. No. 37 at ¶ 32). In support, Plaintiff first cites to *Searl v. Sch. Dist. No. 2, of Lake Cnty.*, 133 U.S. 553 (1890), which it interprets to hold that "it would be unjust to compensate a landowner for improvements built by the government located (mistakenly) on [her] property." (Dkt. No. 37 at ¶ 33). Plaintiff next appeals to *4.620 Acres II*, in which the district court accepted the government's identical equitable argument, based on what the court described as "an unambiguous pronouncement by the Fifth Circuit, cited by no party, that governs the outcome in this case":

> [T]he general rule as to things affixed to the freehold by a trespasser or a person entering tortiously is not applicable as against a body having the power of eminent domain, and entering without leave, and making improvements for the public purpose for which it was created and given such power. And the condemnor may later condemn the property without being required to pay more than the value of the land without the improvements.

(*Id.* at ¶ 34); *4.620 Acres II*, 2022 WL 214636, at *14 (quoting *Anderson-Tully Co. v. United States*, 189 F.2d 192, 197 (5th Cir. 1951)) (internal quotation marks omitted). The district court thus agreed with the government that that the value of "the United States-placed bollard fence improvement on Defendant's property" did not factor into a calculation of just compensation, and that the defendant was entitled only to compensation "for its land's value excepting the bollard wall." *4.620 Acres II*, 2022 WL 214636, at *14.

Defendant attempts to frame the cited cases as support for its position, first seizing on Plaintiff's use of the word "mistakenly" to summarize the holding in *Searl*. (Dkt. No. 39 at p. 15). Defendant takes no issue with the correctness of the term or the summary, but with its application to this case, insisting that Plaintiff "did not mistakenly construct the Wall[.]" (*Id.*). Defendant

emphasizes "the confines of the fact-specific, equitable exception in *Searl*," as set forth by that Court:

> The right of recovery [for improvements], where the [improver] *in good faith believes himself to be the owner,* is declared to stand upon a principle of natural justice and equity[.]… But if the entry upon land is a naked trespass, buildings permanently attached to the soil become the property of the owner of the latter. The trespasser can acquire no rights by his tortious acts.

(*Id.* at p. 16); *Searl*, 133 U.S. 553 at 561-62 (emphasis added by Defendant). Defendant insists that the exception cannot apply here, since Plaintiff constructed the wall without landowner consent, contractual or statutory authority, or a good-faith belief in its right to do so. (Dkt. No. 39 at pp. 14-17).

Defendant also appealed to *Searl* in moving for reconsideration of the ruling in *4.620 Acres II*, asserting that the Supreme Court's decision conflicts with the Fifth Circuit's cited "pronouncement" in *Anderson-Tully*. *See United States v. 4.620 Acres of Land, More or Less, in Hidalgo Cnty., Tex.* (*4.620 Acres III*), 2022 WL 214636, at *5-6 (S.D. Tex. Jan. 25, 2022). The district court rejected this argument, apparently construing *Searl* to neither accept nor reject the viability of an equitable exception in cases of government-placed improvements, even when the government acts as trespasser. *Searl*, as the district court observed, considered the "sole question [of] whether the circuit court erred in holding that the [defendant] could not be allowed for the improvements," and found no error because "the technical rule of law invoked to sustain the defendant's contention that he owned [the improvement] was inapplicable, and the value of the improvement[ ] could not justly be included in the compensation." *Id.* at *6 (quoting *Searl*, 133 U.S. at 565)) (emphasis omitted). However, it did so upon the convergence of two findings: that "although [the government] may have been wholly mistaken" as to its ability to do so, it entered the land and constructed the improvement (a schoolhouse) (1) in good faith (i.e., believing that it had superior title), and (2) "for a purely public purpose" apparent to the owner, who therefore

could not contend that the government "should be treated as a naked trespasser." *Searl*, 133 U.S. at 562-63. The "technical rule of law" that the Supreme Court declined to apply was the general rule that "the trespasser can acquire no rights by his tortious acts," because no naked trespass had occurred. *Id.*

*4.620 Acres III* accounted for this reading of *Searl*, as the district court alternately justified its denial of reconsideration by noting that the government "has a pre-existing easement on the property," and "[t]here is no naked trespass here." *4.620 Acres III*, 2022 WL 214636, at *6 n.66. In this respect, the Court agrees with its sister court. Despite Defendant's repeated assertion that Plaintiff acted inequitably in constructing the wall, the Court has already determined that the original levee easement authorized Plaintiff's entry onto Defendant's property for the purpose of constructing the concrete base of the wall, which served the purpose of levee reinforcement. And even if the Court could now say that the rights granted under the original easement control, it cannot charge Plaintiff with bad faith in relying on the easement deed granted it by the County, which allowed Plaintiff to enter the property to construct "fences…in connection with the operation and maintenance of said levee"—broad language that gave Plaintiff a colorable, even if mistaken, basis for constructing the improvement in its entirety. Finally, despite Defendant's insistence that Plaintiff lacked statutory authority to build the wall, she acknowledges the wall's statutorily authorized public purpose, of which she has long been aware. Even if *Searl* qualifies *Anderson-Tully*'s "pronouncement," either decision supports Plaintiff's position that Defendant's recovery of replacement costs—at present, the only demonstrated method of compensating Defendant for the wall, assuming its ownership of the improvement in whole or in part—does not accord with equity, and all related discovery is therefore irrelevant. On this final ground for Plaintiff's relevancy objection, informed by the Court's analysis of the prior grounds, the Court will sustain the objection and deny the Motion to Compel.

## IV. Conclusion

For the foregoing reasons, the Court **OVERRULES** Plaintiff's vagueness, ambiguity, and undue burden objections, and **SUSTAINS** Plaintiff's relevancy objection, to Defendant's Interrogatories and Requests for Production seeking information related to replacement costs. Accordingly, the Court hereby **ORDERS** that Defendant's Motion to Compel discovery of this information is **DENIED**.

SO ORDERED October 17, 2022, at McAllen, Texas.

Randy Crane
United States District Judge