No. 23-_____

---

In The United States Court of Appeals
For the Fifth Circuit

---

Mary Francis Chupick Bennett,
Trustee of the Bennett Marital Trust,

*Appellant,*

v.

United States of America,

*Appellee.*

---

Appeal from the United States District Court for the Southern District of Texas, McAllen Division, Case No. 7:20-cv-00166

---

Petition for Permission to Appeal

---

Richard B. Phillips, Jr.
State Bar No. 24032833
rich.phillips@hklaw.com

David Bennett
State Bar No. 02139600
david.bennett@hklaw.com

Jared C. Lampson
State Bar No. 24120960
jared.lampson@hklaw.com

Holland & Knight LLP
One Arts Plaza | 1722 Routh Street, Suite 1500
Dallas, TX 75201-2532
Telephone: 214.964.9500
Fax: 214.964.9501

**Counsel for Mary Francis Chupick Bennett,
Trustee of the Bennett Marital Trust**

## CERTIFICATE OF INTERESTED PERSONS

**No. 23-_____, *Mary Francis Chupick Bennett, Trustee of the Bennett Marital Trust v. United States of America***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Appellant: Mary Francis Chupick Bennett, Trustee of the Bennett Marital Trust

Richard B. Phillips, Jr., David Bennett, and Jared C. Lampson of Holland & Knight, LLP are trial and appellate counsel for Mrs. Bennett. Lance Kirby of Jones, Galligan, Key & Lozano, L.L.P. is additional trial counsel for Mrs. Bennett.

Appellee: United States of America

The United States of America is represented by Baltazar Salazar and Alamdar S. Hamdani of the United States Attorney's Office for the Southern District of Texas.

          */s/ Richard B. Phillips, Jr.*

          Richard B. Phillips, Jr.
          Attorney for Appellant Mary Francis
          Chupick Bennett, Trustee of the Bennett Marital Trust

i

# TABLE OF CONTENTS

Page

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   (1) The Bennett Farm and the Easement . . . . . . . . . . . . . . . . 4

   (2) The Government's 2008 Construction of the
       Wall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   (3) The Government's Obfuscatory Attempt to
       Purchase the Wall's Footprint and Initiation of
       this Condemnation Action . . . . . . . . . . . . . . . . . . . . . 6

   (4) Discovery Disputes . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A. Mrs. Bennett's Motion to Compel the Cost
          Information . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B. The Government's Motion for a Protective Order . . . . . . 12

   (5) The Motion to Exclude Expert Testimony . . . . . . . . . . . . . 13

       A. The Parties' Positions . . . . . . . . . . . . . . . . . . . . 14

       B. The Court's Order . . . . . . . . . . . . . . . . . . . . . . 15

Page

Question Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Relief Requested  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Reasons Court Should Grant the Petition . . . . . . . . . . . . . . . . . 17

1.  The Order presents a controlling—and
    important—question of law. . . . . . . . . . . . . . . . . . . . . . . . 17

    A.  The Order addresses the standard for determining
        just compensation when the Government takes
        private property on which it built improvements
        without first condemning the property. . . . . . . . . . . . . 17

    B.  This dispute presents a question of law.  . . . . . . . . . . . 18

    C.  The legal question is controlling because it will
        affect the evidence presented at trial and the
        damages awarded—the only issue in dispute.  . . . . . . . . . 19

    D.  The question is not only controlling but also
        important to federal jurisprudence. . . . . . . . . . . . . . . 21

2.  There is a substantial ground for difference of
    opinion and a dearth of authority on this issue. . . . . . . . . .  24

3.  The Court's resolution of the controlling
    question of law may materially advance the
    ultimate termination of the litigation.. . . . . . . . . . . . . .  26

|                           |     | Page  |
| ------------------------- | --- | ----- |
| Conclusion                |     | 27    |
| Certificate of Service    |     | 29    |
| Certificate of Compliance |     | 30    |

Appendix

    A  —  Order Granting Plaintiff's Motion to Exclude Expert Testimony of Joshua M. Korman on Replacement Costs, and Certifying Underlying Question of Law for Permissive Interlocutory Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . Tab A

# TABLE OF AUTHORITIES

Page

## CASES

*Adhikari v. Daoud & Partners*,
  No. 09-CV-1237, 2012 WL 718933 (S.D. Tex.
  Mar. 5, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Calvo v. U.S.*,
  303 F.2d 902 (9th Cir. 1962). . . . . . . . . . . . . . . . . . . . . . . . .  23

*Coulibaly v. Blinken*,
  No. 14-CV-712 (RC), 2022 WL 3976806 (D.D.C.
  Sept. 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23

*Equal Access for El Paso, Inc. v. Hawkins*,
  428 F. Supp. 2d 585 (W.D. Tex. 2006). . . . . . . . . . . . . . . .  25, 27

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . .  20

*In re Denar Restaurants, LLC*,
  No. 09-41675-RFN-11, 2010 WL 150161 (N.D. Tex.
  Jan. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*,
  No. 22-30609, 2023 WL 5969073 (5th Cir.
  Sept. 14, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Maint. Engineers, Inc. v. U.S.*,
  21 Cl. Ct. 553 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23

*Martinez v. Bohls Equip. Co.*,
  361 F. Supp. 2d 608 (W.D. Tex. 2005) . . . . . . . . . . . . . . . . .  25

*Ryan v. Flowserve Corp.*,
  444 F. Supp. 2d 718 (N.D. Tex. 2006) . . . . . . . . . . . . .  20, 25, 26

Page

*Searl v. School District No. 2, of Lake Cnty.*,
   133 U.S. 553 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
   86 F.3d 656 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . .   20

*Swales v. KLLM Transp. Servs., L.L.C.*,
   985 F.3d 430 (5th Cir. 2021) . . . . . . . . . . . . . . . . . .   19, 24

*U.S. v. 14.87 Acres of Land*,
   799 F. Supp. 266 (D.N.H. 1992) . . . . . . . . . . . . . . . . .   23

*U.S. v. 4.620 Acres of Land*,
   576 F. Supp. 3d 467 (S.D. Tex. 2021). . . . . . . . . . . . . .   26

*U.S v. 4.620 Acres of Land*,
   No. 7:20-CV-00154, 2021 WL 4099829 (S.D. Tex.
   Sept. 9, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*U.S. v. Pena-Rodriguez*,
   110 F.3d 1120 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . .   23

*United States v. Buhler*,
   305 F.2d 319 (5th Cir. 1962) . . . . . . . . . . . . . . .   17, 23, 26

*Van Overdam v. Tex. A&M Univ.*,
   43 F.4th 522 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . .   19

*Van Overdam v. Tex. A&M Univ.*,
   No. 4:18-CV-2011, 2021 WL 4441987 (S.D. Tex.
   Mar. 3, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

## STATUTES

28 U.S.C. § 1292(b) . . . . . . . . . . . . . . . . . . .   3, 17, 26, 27

# JURISDICTIONAL STATEMENT

This is a federal condemnation case, over which federal courts have original jurisdiction. 28 U.S.C. § 1358. The district court here certified the controlling question of law underlying its order (Dkt. 81) for interlocutory appeal, providing this Court with jurisdiction. *See* 28 U.S.C. § 1292(b).

## Introduction

In 2008—without any right to do so and without even checking title—the United States ("Government") built a portion of the border wall across private property (the "Bennett Farm") owned by Appellant Mary Francis Chupick Bennett, Trustee of the Bennett Marital Trust ("Mrs. Bennett"). More than a decade later, the Government filed this case, finally seeking to condemn the property where it had built the wall (the "Condemned Property"). Mrs. Bennett did not contest the taking but did invoke her right to a jury trial on the issue of just compensation.

Mrs. Bennett argues that the just compensation must account for the value of the wall—an improvement that was irrevocably affixed to the Condemned Property at the time of condemnation. The Government does not deny the existence of the wall when title passed but argues that it does not have to compensate Mrs. Bennett for the wall because the Government built it. The Government's argument relies on an equitable exception to the general rule that just compensation for condemned property must account for any improvements. As relevant here, that exception provides that if a condemnor builds improvements on private property without a right to do so but has a

*good-faith belief* in its right to do so, it does not have to compensate the land-owner for those improvements when it subsequently condemns the property.

The issue in this certified interlocutory appeal is whether the good-faith exception requires evidence of the condemnor's subjective good faith or merely requires some evidence that the condemnor *could have acted in good faith*. The district court held that "subjective good faith is irrelevant in this case," and excluded portions of Mrs. Bennett's expert valuation testimony.[1]

The court also certified this order for interlocutory appeal under 28 U.S.C. § 1292(b).[2] The district court held that the order involves a controlling question of law about the legal standard for invoking the equitable exception.[3] Moreover, there is substantial ground for difference of opinion on that question, and resolving it may materially advance the ultimate termination of this litigation.[4] Accordingly, Mrs. Bennett requests that this Court grant permission to appeal.

---

[1] Dkt. 81 at 4.

[2] *Id.* at 6.

[3] *Id.* at 5.

[4] *Id.*

## Statement of the Case

### (1) The Bennett Farm and the Easement

The Bennett Farm is an approximately 240-acre irrigated cotton farm on the banks of the Rio Grande River near the United States-Mexico border. The Bennett Farm is burdened by a levee easement ("Levee Easement"), which Hidalgo County obtained in 1935 for constructing and maintaining levees to control flooding of the Rio Grande. The Levee Easement granted the County:

> [A] right of way easement over and across [the Bennett Farm] *for the purpose of construction, reconstruction, alteration, and maintenance of levees, borrow pits, roads* and to subject said tracts to such burdens as may be placed upon it by the use of same in the control of the flood waters of the Rio Grande River[.][5]

In 1937, the County assigned the Levee Easement to the Government through an easement deed ("Easement Deed"), which purported to assign:

> [T]he perpetual right and easement to enter and re-enter in an upon the lands and premises hereinafter described *for the purpose of constructing, operating, and maintaining suitable levees*, together with right to use so much land for borrow in connection therewith, and the right to construct and maintain thereon suitable road-ways, fences, gates, cattle guards, telephone lines, ramps and road crossings or other structures *in connection with the operation and maintenance of said levee*.[6]

---

[5] Dkt. 34, Exh. B (emphases added).

[6] Dkt. 34, Exh. C (emphases added).

While the assignment in the Easement Deed failed to conform to the precise language in the Levee Easement, it nonetheless clearly contemplated an easement for flood-control purposes.[7] And for decades, the easement was used exclusively for that purpose.

**(2)  The Government's 2008 Construction of the Wall**

In 2008, the Government built an early section of what is now dubbed the "border wall," across mostly irrigated farmland, including the Bennett Farm. Incredibly, the Government entered the Bennett Farm—private property— and built the section of the wall at issue here (the "Wall") without any right to do so. In sworn testimony in condemnation litigation involving property immediately east of the Bennett Farm, the Government official in charge of this project acknowledged that, contrary to usual practice, he neither investigated the Government's property rights nor attempted to acquire any property rights before beginning the project.[8]

---

[7] An assignor of an interest in real property can, of course, convey no more rights than it has.

[8] Dkt. 34, Exh. A.

The Wall consists of a massive rebar and concrete vertical base into which are embedded rust-colored "bollard" poles spaced four inches apart and extending skyward as much as ten feet or more.[9] The Government has admitted that the Wall's purpose is to "impede" and "deny" illegal crossings of the U.S. southern border.[10] The Wall on Mrs. Bennett's property, like the rest of wall along that stretch of the river, stands immediately south of an earthen levee, which has been maintained for decades under the Levee Easement.

**(3)   The Government's Obfuscatory Attempt to Purchase the Wall's Footprint and Initiation of this Condemnation Action**

In 2019, more than a decade after building the Wall, the Government contacted Mrs. Bennett claiming that it was seeking to purchase property around the Wall to build a gate in a gap in the bollard fencing. But there was more to the Government's efforts to buy the land. The Government's written offer, which included a plat of the subject property, revealed that the Government was not just seeking to purchase the property that might be necessary for a gate. The Government instead sought a fee-simple interest in the entire swath of property on the Bennett Farm containing the Wall. The construction of a

---

[9] Dkt. 34 at 6; Dkt. 37 at 8; Dkt. 42 at 8.

[10] Dkt. 34, Exh. A.

6

gate was a pretext—an attempt by the Government to hide that it was finally seeking to obtain rights in the property on which it had built the Wall more than a decade earlier. And by trying to buy a fee interest in the Wall's "footprint," the Government impliedly acknowledged that it built the Wall on the Bennett Farm without any right to do so. The Government's attempt to clean up its mistake by purchasing the Condemned Property for pennies on the dollar failed.

In June 2020—twelve years after building the Wall—the Government filed this condemnation action.[11] The Declaration accompanying the Complaint was signed by Loren Flossman, an acquisition program manager for the border-wall project.[12] Mr. Flossman articulated the "public purpose" for the taking:

> The public purpose for which said property is taken is to construct, install, operate, and maintain roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas.[13]

---

[11] Dkt. 1

[12] Dkt. 2.

[13] *Id.* at Sch. B.

Mr. Flossman avers in the future tense as if the listed improvements would be built after the Government acquired the Condemned Property. In fact, the Government had built "related structures designed to help secure the United States/Mexico border" on the Condemned Property more than a decade earlier. Similarly, the Complaint characterizes improvements as "to be built" that had been built more than a decade earlier. The Complaint does not mention that the Government had used a different pretext—purchasing the property for a gate—when it attempted to purchase the property before filing the Complaint.

Neither the Complaint nor the Declaration disclose that the only incremental "public purpose" that would be achieved if the Court granted the relief requested in the Complaint would be granting the Government rights in the property and the Wall that it lacked. Rather, the Government sought to ignore its trespass on the Bennett Farm, its unauthorized construction of the Wall, and the fact that the Wall had stood for more than a decade without a penny of compensation, or even an acknowledgement of malfeasance. By doing so, the Government sought to exclude the value of Mrs. Bennett's Wall from the calculation of her condemnation award, even though it had long since

been affixed to the Bennett Farm and, therefore, under basic property law, belonged to Mrs. Bennett.

The Government took title to the Condemned Property in 2020, and Mrs. Bennett reserved her right to a jury trial on the amount of just compensation she is owed. Thus, just compensation is the only issue in this case.[14]

## (4) Discovery Disputes

### A. Mrs. Bennett's Motion to Compel the Cost Information

Unwilling to let the Government steamroll her right to just compensation and ignore its violation of her private-property rights, Mrs. Bennett served discovery on the Government seeking information about the cost to construct, in Hidalgo County within the prior three years, a structure similar to the Wall ("Cost Information").[15] The Government objected on relevancy grounds. Mrs. Bennett had to file a motion to compel responses ("MTC").[16]

In the MTC, Mrs. Bennett explained that the Cost Information was relevant because improvements constructed on a landowner's property become

---

[14] Dkt. 37 at 1.

[15] Dkt. 42 at 3.

[16] Dkt. 34.

the landowner's.[17] Mrs. Bennett further argued that, while *Searl v. School District No. 2, of Lake County*, 133 U.S. 553 (1890), recognized a limited exception to that general rule where a condemning authority constructs improvements before condemnation with a good-faith belief in its right to do so, that exception is inapplicable because the Government did not act in good faith.[18]

The Government relied on *Searl* to support its objection, arguing that *Searl* "held it would be unjust to compensate a landowner for improvements built by the government located (mistakenly) on his property."[19] Despite accurately stating that *Searl*'s equitable exception requires a *mistake*—as opposed to mere lack of inquiry or intentional trespass—the Government argued that the rule applies to *any* improvements built by the Government on another's property.[20] The Government additionally argued that the Wall has a "dual purpose," immigration *and* flood control, so it was authorized by the Levee Easement.[21]

---

[17] *Id.* at 14–17.

[18] *Id.* at 16–17.

[19] Dkt. 37 at 25–26.

[20] *Id.* at 27.

[21] *Id.* at 6–8.

In reply, Mrs. Bennett pointed out that the *Searl* exception requires good faith on the Government's part.[22] She further noted that the Government did not even attempt to argue that it had a good-faith belief at the time it constructed the Wall that it was acting in conformity with the Levee Easement.[23]

The district court denied the MTC.[24] The court held that the Levee Easement did not permit the Government to construct the entirety of the Wall.[25] But the court also held that the Government did have a right to be on the Bennett Farm as a result of its Levee Easement, which the court held gave the Government the right to construct the concrete portion of the Wall.[26] The court then held that "it cannot charge [the Government] with bad faith in relying on the easement deed granted it by the County, which allowed Plaintiff to enter the property to construct 'fences…in connection with the operation and maintenance of said levee'—broad language that gave Plaintiff a colorable, even if mistaken, basis for constructing the improvement in its entirety."[27]

---

[22] Dkt. 39 at 15–17.

[23] *Id*. at 17.

[24] Dkt. 42.

[25] *Id.* at 9–10.

[26] *Id*. at 18.

[27] *Id.*

The court held that *Searl*'s equitable exception applied because the Government *could have been* mistaken about its rights.

## B. The Government's Motion for a Protective Order

Consistent with that holding, Mrs. Bennett served a deposition notice on the Government, aimed in part at discovering whether the Government was in fact mistaken about its easement rights.[28] The Government objected to the deposition topics directed toward its belief when it constructed the Wall ("Good-Faith Information") and filed a motion for a protective order ("MPO").[29] The Government argued that the deposition notice was an "attempt to circumvent" the court's order denying the MTC.[30]

Mrs. Bennett argued that the court's order confirmed the relevance of the Good-Faith Information.[31] That is, the court had held based on the information available to it, that it could not charge the Government with "bad faith."[32] The deposition notice sought information that would allow the court,

---

[28] Dkt. 50 at 1–2.

[29] Dkt. 45.

[30] *Id.* at 7.

[31] Dkt. 48 at 6–7.

[32] *Id.* at 6–8.

or the jury, to do just that.[33] The topics were directly relevant to the Government's state of mind, an issue on which the court's order depended.[34] Mrs. Bennett further argued that the Government's purported good faith is a fact issue for the jury to decide.[35]

The court granted the MPO, holding that a condemning authority need not have subjectively acted in good faith (i.e., been mistaken), if there is some set of circumstances under which *it could have* subjectively acted in good faith.[36]

**(5) The Motion to Exclude Expert Testimony**

Despite being denied discovery, Mrs. Bennett prepared her case pursuant to her theory that the Government must compensate her for the Wall, using evidence she was able to obtain from public records and otherwise. Mrs. Bennett's valuation expert, Joshua M. Korman, prepared a report in which, at Mrs. Bennett's instruction, he valued the Condemned Property both with and

---

[33] *Id.*

[34] *Id.* at 9–16.

[35] *Id.*

[36] Dkt. 50 at 8. Mrs. Bennett disagrees with the implication that reliance on the Easement Deed would have been sufficient to hold that the Government acted in good faith, but that issue is irrelevant to the question presented here: Did the Government have to rely on anything?

without the Wall.[37] The Government filed a Motion to Exclude Mr. Korman's testimony ("Motion"), which underlies the Order before this Court.

## A. The Parties' Positions

The Government relied on the district court's prior rulings on the MTC and MPO to argue that Mr. Korman's valuation of the Wall must be excluded because the Wall's value is irrelevant.[38] Mrs. Bennett again pointed out that the Government must have *subjectively* (actually) acted in good faith to take advantage of *Searl*'s narrow equitable exception.[39] She argued that "objective good faith," without a corresponding subjective component, is an anomaly.[40] That is, the concept of good faith itself entails a subjective belief. There is nowhere else in the law that a party can invoke good faith as a legal defense when it did not *actually* act in good faith.[41] And here, the Government has not even attempted to argue that it actually believed it had the right to build the Wall; it has asserted that its subjective state of mind is irrelevant.[42] Mrs. Bennett

---

[37] Dkt. 64 at 2, 5; Dkt. 81 at 3.

[38] Dkt. 57 at 12–15.

[39] Dkt. 64 at 16.

[40] *Id.* at 20.

[41] *Id.* at 17–20.

[42] *Id.* at 23.

cited evidence that the Government performed *no inquiry* into whether it had the right to construct the Wall.[43]

Mrs. Bennett requested, in the alternative, that if the district court were inclined to grant the Motion, the court certify the controlling legal issue of whether subjective good faith is required to invoke *Searl*'s narrow equitable exception to this Court for interlocutory appeal.[44]

## B. The Court's Order

The district court entered an order (the "Order") on September 26, 2023, granting in relevant part the Motion.[45] The court recounted its prior rulings on the MTC and MPO and reiterated its understanding of the standard to be applied: "subjective good faith is irrelevant in this case."[46]

The court also certified its order excluding Mr. Korman's opinions for interlocutory appeal.[47] The court observed that the question "has a material effect on the outcome of the only issue remaining in this case: the amount to which [Mrs. Bennett] is entitled as just compensation for the taking of her

---

[43] *Id.* at 22–23.

[44] *Id.* at 28–33.

[45] Dkt. 81.

[46] *Id.* at 1–4.

[47] *Id.* at 6.

property."[48] The court "recognize[d] that 'whether the Government can benefit from the *Searl* good-faith equitable exception irrespective of its subjective good faith … is a novel question of first impression' on which substantial ground for difference of opinion exists."[49] Finally, it observed that "an immediate appeal … would involve no undue expenditure of time or expense by the parties, and would avoid the potential for two trials should a later, direct appeal result in reversal and remand on the very same issue."[50] Accordingly, the court stayed the underlying case and certified its Order for interlocutory appeal, noting that "the statutory criteria for certification are met … on the determinative issue in this case."[51]

## QUESTION PRESENTED

Whether the government-as-improver can benefit from *Searl*'s equitable exception to the rule that "the trespasser can acquire no rights by his tortious acts" absent a subjective good faith basis for the improvement, and if not, whose subjective good faith is relevant to a determination of whether the exception applies.[52]

---

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 6.

## RELIEF REQUESTED

Mrs. Bennett seeks reversal of the district court's order on the Motion because the Government is not entitled to benefit from *Searl*'s equitable exception unless it subjectively acted in good faith.

## REASONS COURT SHOULD GRANT THE PETITION

The conditions under 28 U.S.C. § 1292(b) are met because the Order presents a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of this litigation. Moreover, the appeal presents an important issue on which this Court's guidance is needed. This Court should therefore accept the district court's certification and grant permission to appeal.

**1.  The Order presents a controlling—and important—question of law.**

**A.  The Order addresses the standard for determining just compensation when the Government takes private property on which it built improvements without first condemning the property.**

When the government condemns property, it must pay the fair-market value of the property as enhanced by any improvements. *See United States v.*

*Buhler*, 305 F.2d 319, 322 (5th Cir. 1962). There is a narrow exception for improvements built before the condemnation with a good-faith belief in the right to do so. *See Searl*, 133 U.S. at 561–62.

Here, the district court held that the Government can avail itself of this good-faith exception whether or not the Government subjectively believed that it had a right to build the Wall. The court held that the Levee Easement (and Easement Deed) are broad enough to give the Government an objectively reasonable—even if incorrect—belief in its right to construct the Wall. But the court also held that it does not matter whether the Government actually reviewed those documents. That is, the court held that the good-faith exception does not require the condemnor to prove that it in fact believed it had the right to build the improvements—that it *subjectively* acted in good faith. The court held that it is sufficient if the condemnor merely *could have* had that belief.

## B.   This dispute presents a question of law.

The Government may argue that the Order involves a question of fact. But the issue is what the Government must prove to invoke *Searl*'s equitable

exception.[53] The standard of proof (and what evidence is required and admissible) is a question of law. This Court routinely, and recently, has accepted certified interlocutory appeals that present questions about the controlling legal standard. *E.g.*, *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, No. 22-30609, 2023 WL 5969073, at *2 (5th Cir. Sept. 14, 2023) (noting acceptance of interlocutory appeal concerning "controlling question of law" as to the applicable standard); *Van Overdam v. Tex. A&M Univ.*, 43 F.4th 522, 526 (5th Cir. 2022) (same); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 439 (5th Cir. 2021) (same).

This appeal would not ask the Court to resolve the ultimate fact question about the Government's good faith. That would be addressed at trial after this Court resolves the controlling legal issue.

## C. The legal question is controlling because it will affect the evidence presented at trial and the damages awarded—the only issue in dispute.

The correct standard is also a controlling question of law governing the only issue in dispute.[54] A question of law is "controlling" when it "could materially affect the outcome of the case." *In re Denar Restaurants, LLC*, No. 09-

---

[53] Dkt. 81 at 4.

[54] *Id.* at 5.

41675-RFN-11, 2010 WL 150161, at *12 (N.D. Tex. Jan. 14, 2010) (citing *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996); *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) ("[A] controlling question of law—although not consistently defined—at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants."). A question of law is "controlling" if its resolution is "likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon*, 86 F.3d at 659.

The amount of just compensation is the only issue in this case. The district court excluded the opinion about the Wall's value. And the excluded testimony, if admitted, could increase the Condemned Property's valuation by a factor of more than ten.[55] If the district court misconstrued the standard, this would undoubtedly be reversible error requiring a retrial. That is, under the standard articulated by the district court, this case will proceed to trial without

---

[55] Dkt. 57-1 at 20.

the most crucial evidence. Correction of the court's error before trial is necessary to prevent a significant waste of the parties' and the court's resources—as the district court itself recognized in certifying its order.[56]

### D. The question is not only controlling but also important to federal jurisprudence.

Condemnation impairs one of the most sacred constitutionally protected rights—the right to private property. While condemnation is a necessity in some instances, the landowner's right to just compensation is a necessary and fundamental counterbalance. Proceeding to trial without reversal of the court's Order, which exponentially diminishes, and renders unjust, the amount of compensation that the jury is likely to award, eviscerates that counterbalance. And trying this case again after an ultimate appellate reversal, which will waste significant time and resources that Mrs. Bennett will never be able to recoup, does not remedy that deprivation.

The standard adopted by the court here—that good faith does not require a subjective component—is contrary to every other good-faith standard of which Mrs. Bennett is aware. If anything, the subjective component of a good-faith inquiry is more, not less, important when analyzing the Government's

---

[56] Dkt. 81 at 5.

right to appropriate constitutionally protected private property. Indeed, *Searl*—the origin of the equitable exception—made this clear: "The right of recovery [by the improver for improvements made on the land of another], where the occupant *in good faith believes himself to be the owner*, is declared to stand upon a principle of natural justice and equity[.]" 133 U.S. at 561–62 (emphasis added). *Searl* thus recognizes that the equitable exception applies not to every governmental intrusion onto private property but only to a good-faith improver—one that subjectively believes in its authority.

The truism that a party relying on a document to establish its good faith must establish that it actually relied on the document, not merely that it could have, is exemplified in other areas of the law. *E.g.*, *Coulibaly v. Blinken*, No. 14-CV-712 (RC), 2022 WL 3976806, at *3 (D.D.C. Sept. 1, 2022) ("The principal problem for the [Government] is that it has not shown that it *actually arrived at and relied on any considered* interpretation of the FMLA. ... *[The Government] has simply offered an after-the-fact argument about how a possible understanding might have been reasonable, which is insufficient.*" (citations omitted; emphases added)); *Maint. Engineers, Inc. v. U.S.*, 21 Cl. Ct. 553, 562 (1990) (noting that alleged good-faith reliance "*must not be a mere afterthought*, since

it is necessary that the [party] *actually and reasonably* … relied" (emphases added)).

Often, as here, the subjective good-faith state of mind must also be objectively reasonable. *E.g.*, *Searl*, 133 U.S. at 562; *Coulibaly*, 2022 WL 3976806, at *3; *U.S. v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997); *Maint. Engineers, Inc.*, 21 Cl. Ct. at 562. But objective reasonableness is not—and cannot be—the only requirement. Mrs. Bennett is aware of no case—and neither the Government nor the district court pointed to any—that holds that a party can invoke a good-faith defense without proving its subjective state of mind. This is true regardless of whether the party claiming good faith is acting for a "public purpose." *E.g.*, *Buhler*, 305 F.2d at 322 ("Although the [improvements] were built at government expense, and were now to be re-taken by the Government … [the landowners] are nonetheless entitled to be compensated for the real value of the property taken, even if that value has been greatly enhanced by the presence of these improvements on the land at the time of the taking."); s*ee also, e.g.*, *Calvo v. U.S.*, 303 F.2d 902, 909 (9th Cir. 1962); *U.S. v. 14.87 Acres of Land*, 799 F. Supp. 266, 230–31 (D.N.H. 1992).

If the Government were given carte blanche judicial authorization to enter private land and construct improvements without being required to compensate the landowner for those improvements in a later condemnation action because those improvements had a public purpose, there would be no incentive for the Government to comply with its constitutional duty to legally acquire land before engaging in public-works projects. It could simply enter land and begin construction with a "sue me" approach, which the district court's Order sanctions.

In short, the district court's Order, which held that the good-faith standard does not require any subjective component, presents a controlling and important question of law.

## 2.  There is a substantial ground for difference of opinion and a dearth of authority on this issue.

The Order presents a novel and difficult question of first impression—or at a minimum, a novel and difficult question that has not been directly addressed in over a century—as the district court recognized.[57] "This case poses an issue that has been under-studied but whose importance cannot be overstated[.]" *Swales*, 985 F.3d at 443.

---

[57] Dkt. 81 at 5.

A substantial ground for difference of opinion exists when "a reasonable appellate judge could vote for reversal of the challenged order." *Ryan*, 444 F. Supp. 2d at 723; *see also Equal Access for El Paso, Inc. v. Hawkins*, 428 F. Supp. 2d 585, 627 (W.D. Tex. 2006), *rev'd on other grounds*, 509 F.3d 697 (5th Cir. 2007); *Martinez v. Bohls Equip. Co.*, 361 F. Supp. 2d 608, 633 (W.D. Tex. 2005) (finding substantial ground for difference of opinion where only appellate court to directly rule on issue disagreed with the appealed order). Courts have found a substantial ground for difference of opinion where the "trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue … or if novel and difficult questions of first impression are presented." *Adhikari v. Daoud & Partners*, No. 09-CV-1237, 2012 WL 718933, at *2 (S.D. Tex. Mar. 5, 2012) (citation omitted).

There has in fact been recent disagreement about this issue. In *U.S v. 4.620 Acres of Land*, No. 7:20-CV-00154, 2021 WL 4099829, at *3–4 (S.D. Tex. Sept. 9, 2021), another court in the same district as the court below originally agreed that the Government's state of mind was relevant to whether the value of the improvements must be included in the condemnation award. That court later held on summary judgment, based solely on dicta from this Court's opinion in *Anderson-Tulley*, that the equitable exception applies irrespective of

the Government's belief in its rights. *See U.S. v. 4.620 Acres of Land*, 576 F. Supp. 3d 467, 492 (S.D. Tex. 2021), *reconsideration denied*, No. 7:20-CV-00154, 2022 WL 214636 (S.D. Tex. Jan. 25, 2022). The quote on which the court relied was not only dicta but also was inconsistent with the Supreme Court's analysis in *Searl*. Moreover, this Court's *Buhler* decision calls into question (and confirms) that the *Anderson-Tulley* dicta is not the applicable rule. But despite this Court's opinions in *Anderson-Tulley* and *Buhler*, neither this Court, nor any court as far as Mrs. Bennett is aware, has squarely addressed the question presented here.

For all these reasons, whether subjective good faith is the correct standard is something for which a substantial ground for difference of opinion exists and on which this Court should definitively rule.

### 3. The Court's resolution of the controlling question of law may materially advance the ultimate termination of the litigation.

For the same reasons that the court's Order presents a controlling question of law, resolving that question may materially advance the ultimate termination of this litigation. "The institutional efficiency of the federal court system is among the chief concerns motivating § 1292(b)." *Ryan*, 444 F. Supp. 2d at 723 (citation omitted). In determining whether an interlocutory appeal

may materially advance the ultimate termination of the litigation, a court should examine whether a denial of an immediate appeal would result in wasted litigation and expense. *E.g.*, *Hawkins*, 428 F. Supp. 2d at 627 ("[I]t would be an improper use of judicial resources and the resources of the parties to proceed with the case before these aforementioned questions of law are decided."); *Van Overdam v. Tex. A&M Univ.*, No. 4:18-CV-2011, 2021 WL 4441987, at *2 (S.D. Tex. Mar. 3, 2021) (certifying order because "these issues affect the claims and scope of discovery in this case, and their resolution would thus materially advance the litigation").

Final resolution of the question identified by the district court is therefore likely to advance the ultimate termination of this litigation. That is, immediate guidance from this Court about whether the admissibility of the Wall's valuation is dependent upon the Government's subjective good faith will avoid an error-ridden trial at which Mrs. Bennett is not allowed to put on evidence that could exponentially increase the amount of just compensation to which she is owed.

## CONCLUSION

This Court should accept the district court's certification pursuant to 28 U.S.C. § 1292(b) and resolve the controlling and important question of law

underlying the district court's Order as to which there exists substantial ground for difference of opinion. Doing so may materially advance the ultimate termination of this litigation.

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Richard B. Phillips, Jr.*
    Richard B. Phillips, Jr.
    State Bar No. 24032833
    rich.phillips@hklaw.com
    David Bennett
    State Bar No. 02139600
    david.bennett@hklaw.com
    Jared C. Lampson
    State Bar No. 24120960
    jared.lampson@hklaw.com

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201-2532
Telephone: 214.964.9500
Fax: 214.964.9501

**Counsel for Appellant Mary Francis Chupick Bennett, Trustee of the Bennett Marital Trust**

## CERTIFICATE OF SERVICE

I certify that on October 6, 2023, I served the foregoing petition by email on the following:

Baltazar Salazar
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
600 E. Harrison, Suite 201
Brownsville, Texas 78520
956-983-6057
Fax: 956-548-2775
Email: Baltazar.Salazar@usdoj.gov

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

## Certificate of Compliance

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) because, excluding the parts of the document exempted by Rule 32(f), this brief contains 5,135 words. I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Equity font and 13-point Equity font in the footnotes.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.
Attorney for Appellant

**T**AB

**A**

United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-00166 |
| | § | |
| 5.934 ACRES OF LAND, MORE OR LESS, *et* | § | |
| *al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY
OF JOSHUA M. KORMAN ON REPLACEMENT COSTS, AND CERTIFYING
UNDERLYING QUESTION OF LAW FOR PERMISSIVE INTERLOCUTORY APPEAL**

**I.     Background**

This is a condemnation action in which the sole, remaining issue for trial is the amount that

Plaintiff United States of America must pay to justly compensate Defendant Mary Francis Chupick

Bennett, Trustee of the Bennett Marital Trust, for the July 10, 2020 taking of fee simple title to

5.934 acres of her land (the "property") located along the Texas-Mexico border.  On two occasions,

in the contexts of Defendant's motion to compel discovery responses and Plaintiff's motion for

protective order against certain matters noticed for its corporate representative's deposition, the

Court has addressed the pivotal dispute affecting the parties' resolution of just compensation:

whether Defendant may recover replacement costs for the concrete barrier with bollard fencing

(collectively, "wall") erected by Plaintiff atop the preexisting levee on the property in 2008.  In its

order on the motion to compel, dated October 17, 2022, the Court sustained Plaintiff's chief

relevancy objection to the costs discovery sought, reasoning that Defendant may not equitably

recover replacement costs for a government-built structure in part authorized by Plaintiff's

longstanding levee easement and built under a colorable—even if mistaken—understanding of its

easement rights, for a statutorily authorized public purpose.  (Dkt. No. 42).  Defendant interpreted

the Court's order to hold, "based on the information before [the Court], that it could not charge the Government with bad faith," and therefore to invite her to seek information from Plaintiff's corporate representative "to prove to the Court—or the jury—that she is correct that the Government lacked good faith" in placing the wall on her property, such that replacement costs remain available. Plaintiff moved for a protective order prohibiting inquiry into the good-faith information, and the Court granted the motion by order dated February 27, 2023. (Dkt. No. 50). Both rulings turn on the Court's interpretation of an equitable exception to the rule that "the trespasser can acquire no rights by his tortious acts," as applied by the U.S. Supreme Court more than a century ago, when the government places an improvement on another's property (1) in good faith (i.e., believing it had superior title) and (2) "for a purely public purpose" apparent to the owner, who cannot then claim that the government "should be treated as a naked trespasser." *Searl v. Sch. Dist. No. 2, of Lake Cnty.*, 133 U.S. 553, 562-63 (1890). As the Court understands it, this test strikes the balance necessary to achieve compensation for a taking that is "just, not merely to the individual whose property is taken, but to public which is to pay for it." *Id.* at 562. Here, (1) the dispute is not over title but rather the scope of the government's easement rights in 2008, which the Court has twice interpreted as broad, and (2) the government indisputably had statutory authority to construct the wall at that time. Viewing these factors in balance, the Court's February 27, 2023 order eschewed Defendant's insistence that the equitable exception requires a subjective good faith basis for an improvement "where, as here, the property records themselves offer reasonable grounds for a statutorily-authorized improvement with a known public purpose." The Court found the good-faith information irrelevant, that wide-ranging topics for deposition aimed at (but by no means assured in) uncovering the beliefs of government decisionmakers in 2008 were not proportional to the needs of the case, and that requiring Plaintiff to investigate and acquaint its

corporate representative with this information would impose an undue burden, justifying protection from the sought-after discovery.

As the June 2023 final pretrial setting neared, the parties filed various motions, three of which remain pending: Plaintiff's Motion to Exclude the testimony of Defendant's valuation expert, Joshua M. Korman, Plaintiff's Motion to Strike Korman's revised expert report as untimely, and Plaintiff's Motion in Limine. (Dkt. Nos. 57, 58, 69). Yet again, the Motions and responsive briefing raise the replacement costs/good-faith issue, asking the Court to determine whether Korman may testify as to the replacement value of the wall, and whether evidence on replacement costs and the government's subjective good faith should be excluded from the jury's determination. (Dkt. Nos. 57, 58, 63, 64, 66, 67, 69). Within her response to Plaintiff's Motion to Exclude, Defendant asks the Court to reconsider its ruling that subjective good faith is irrelevant, or if the Court grants the Motion, to then certify the issue for a permissive appeal under 28 U.S.C. § 1292(b). (Dkt. No. 64). In reply, Plaintiff argues against allowing a "third bite at the apple" through reconsideration or certification, objects to Defendant's reliance on deposition testimony from an unrelated inverse condemnation case to make her case that the government lacked subjective good faith, and takes the position that Defendant waived her good-faith argument by failing to raise it in her answer. (Dkt. No. 66). At the May 25, 2023 motions hearing, the Court discussed Defendant's request for certification with both sides and elected to vacate the existing scheduling order to allow for further consideration of this request. (Dkt. No. 73). After the hearing, Plaintiff filed a notice objecting to the timeliness of the certification request and its inclusion in Defendant's response to the Motion to Exclude, repeating its three arguments in opposition to certification, and asking the Court for additional time to brief its opposition. (Dkt. Nos. 75). Most recently, Defendant filed a proposed certification order and Plaintiff responded, again asking for additional time to brief the certification issue. (Dkt. Nos. 79, 80). Upon

consideration of the record, in light of the relevant law, the Court finds it appropriate to exclude

Korman's opinion on replacement value, certify the issue of subjective good faith for permissive

interlocutory appeal, and stay the remainder of the case pending appeal, without need for further

briefing.

## II.    Analysis

The statutory basis for Defendant's certification request provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).  Plaintiff objects to the timeliness of the request, arguing that Defendant

failed to make it within ten days of either of the Court's prior two orders, but the ten-day rule

governs the time within which Defendant must seek to appeal upon entry of the certification order,

which the Court has not yet entered.  (Dkt. No. 75 at ¶ 3); *see Sw. Elec. Power Co. v. Certain

Underwriters at Lloyds of London*, 772 F.3d 384, 386 n.2 (5th Cir. 2014).  Rather, the Court has

before it Defendant's anticipatory request for certification should the Court grant the Motion to

Exclude, and knows of no requirement that this request be made in different form.  For the reasons

explained in its prior orders and summarized *supra*, the Court finds that its application of *Searl*'s

equitable exception strikes the balance necessary to achieve just compensation and declines to

reconsider its ruling that subjective good faith is irrelevant in this case.  Therefore, it must exclude

Korman's opinion as to the replacement value of the wall.[1]  Turning, then, to the statutory

---

[1]  Plaintiff also moves to exclude that portion of Korman's opinion that calculates the property's value to which replacement costs should be added as the difference between its value in a "hypothetical" condition, i.e., unencumbered by the wall, and its encumbered value.  (Dkt. No. 57 at ¶¶ 23-28).  In the Court's view,

requirements for certification, the Court recognizes that the relevance of the government's subjective good faith is a "controlling" question of law, in that it has material effect on the outcome of the only issue remaining in this case: the amount to which Defendant is entitled as just compensation for the taking of her property. (Dkt. No. 64 at pp. 28-29). And despite its unwillingness to now reconsider the issue, the Court also recognizes that "whether the Government can benefit from the *Searl* good-faith equitable exception irrespective of its subjective good faith…is a novel question of first impression" on which substantial ground for difference of opinion exists. (*Id.* at pp. 30-31). Finally, each side has thoroughly briefed the issue and the Court has thoroughly discussed it, suggesting that an immediate appeal from the order would involve no undue expenditure of time or expense by the parties, and would avoid the potential for two trials should a later, direct appeal result in reversal and remand on the very same issue. (*Id.* at pp. 32-33). Although Plaintiff has asked for additional time to brief whether certification is appropriate, it has had ample time to do so, and allowing more briefing would result in further, unnecessary delay. In the Court's view, the result is clear: the statutory criteria for certification are met, and a stay of the case is warranted to conserve the Court's and the parties' resources pending resolution of the determinative issue in this case.

Briefly, the Court addresses Plaintiff's two remaining arguments raised in its reply and notice. In acknowledgement of Plaintiff's challenge to Defendant's reliance on isolated deposition testimony from a prior case to illustrate the absence of subjective good faith on the part of the government, and with the goal of ensuring the most efficient resolution of the case, the Court will frame the question of law for certification to encompass inquiry into whose subjective good faith, if required under *Searl*, is relevant. (Dkt. No. 66 at ¶ 6). Plaintiff's final argument that Defendant

---

this valuation method offers an alternate means of accounting for the government's unilateral addition of the wall to Defendant's property in 2008, and the Court reserves ruling on Plaintiff's request to exclude it from the jury's consideration pending resolution of Defendant's appeal.

5 / 7

waived her right to insist upon subjective good faith does not counsel against certification, since the operative rule waives objections and defenses *to the taking* that are not stated in the defendant's answer, not any objection or defense to the government's calculation of just compensation. (*Id.* at ¶ 7); *see* Fᴇᴅ. R. Cɪᴠ. P. 71.1(e)(2)(C), (3). Plaintiff fails to point to a basis for denying certification, and no reason exists to delay it.

## III.  Conclusion

In light of the foregoing, the Court hereby **ORDERS** that Plaintiff's Motion to Exclude Korman's opinion on replacement costs (Dkt. No. 57) is **GRANTED**, and the underlying question of law is **CERTIFIED** for permissive interlocutory appeal under 28 U.S.C. § 1292(b):

> Whether the government-as-improver can benefit from *Searl*'s equitable exception to the rule that "the trespasser can acquire no rights by his tortious acts" absent a subjective good faith basis for the improvement, and if not, whose subjective good faith is relevant to a determination of whether the exception applies.

In its discretion, the Court reserves ruling on all other pending matters and hereby **STAYS** all proceedings until resolution of Defendant's appeal.

SO ORDERED September 26, 2023, at McAllen, Texas.

Randy Crane
Chief United States District Judge

Case 23-00162-66 Document 95-6 Filed on 09/05/23 in TXSB Page 10 of 25
Case 3:19-cv-00162-44 Document 952-924 Filed on Page 453 in Date Filed 09/05/2035